# McNAUGHTON v. JOHNSON, GOVERNOR OF THE STATE OF CALIFORNIA, ET AL.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 494.  Argued December 12, 1916.—Decided January 8, 1917.

The practice of fitting glasses to the human eye, and treating ocular inflammation, without the use of drugs or surgery, is subject to supervision and regulation under the state police power.

No discrimination violative of the equal protection clause of the Four-
teenth Amendment is deducible from the fact that a state law (Laws
of California, 1913, c. 598) requiring persons treating inflammation
of the eye and fitting glasses without the use of drugs to be licensed
under the name of "optometrists" and subjecting their practice to
regulation excepts persons who employ drugs in their practice, it ap-
pearing that the latter, through another statute, are subject to similar
supervision and regulation under another name.

233 Fed. Rep. 334, affirmed.

THE case is stated in the opinion.

*Mr. Tom L. Johnston* for appellant.

*Mr. Robert M. Clarke* and *Mr. Thomas Lee Woolwine*,
with whom *Mr. U. S. Webb*, Attorney General of the
State of California, *Mr. George E. Cryer* and *Mr. Ray E.
Nimmo* were on the brief, for appellees.

MR. JUSTICE McKENNA delivered the opinion of the
court.

This case was submitted with *Crane v. Johnson, ante,*
339. It was considered in the District Court with that
case, three judges sitting as in that case. It comes here
on appeal from an order denying an interlocutory injunc-
tion. The court entertained jurisdiction upon the au-
thority of *Raich v. Truax,* 219 Fed. Rep. 273, 283; *Truax
v. Raich,* 239 U. S. 33.

The court in denying the injunction said "that the
granting of such orders is within the sound discretion of
the court, and in the exercise of such discretion, based
upon the averments of the bills, we are of opinion that
the application should be denied." The court did not
pass upon the merits, expressing a doubt of its authority
to do so as the court said it was composed of three judges
"under statutory requirement."

Appellant—we shall call her complainant, and state

narratively the facts she alleged—is a regularly graduated opthalmologist, which is a school of scientific learning and practice confined to the treatment of the inflammation of the eye and its membranes and in fitting glasses to the human eye. She has practiced her profession in the City and County of Los Angeles for the past three years and is dependent upon the proceeds of her labor and services. She does not employ either medicine, drugs or surgery, nor is there anything in her practice hurtful to the individual or dangerous to society.

In her practice it is absolutely necessary and indispensable that she measure the powers and range of human vision without the use of drugs and there is no law in the State of California prescribing an examination for and regulating the practice of opthalmology.

At its 40th session the legislature of California enacted a statute by which it provided that it should be unlawful for any person to engage in the practice of optometry without first having obtained a certificate of registration from the State Board of Optometry under an act to regulate that practice approved March 20, 1903, and the acts amendatory thereof.

The practice of optometry is defined to be "the employment of any means other than the use of drugs for the measurement of the powers or range of human vision or the determination of the accommodative and refractive states of the human eye or the scope of its functions in general or the adaptation of lenses or frames for the aid thereof."

The board is given the power, among others, to visit schools where the science of optometry is taught and accredit such as the board finds give a sufficient course of study for the preparation of optometrists; to keep a register of all persons to whom certificates of registration have been issued and of all itinerant licenses, and to grant or refuse or revoke such certificates. The act

prescribes a course of examination, describes the particulars of the examinations, and provides that every applicant for an examination upon passing it shall be entitled to be registered in the board's register of optometrists and a certificate of registration shall be issued to him.

"At such examinations the board shall examine applicants in the anatomy of the eye, in normal and abnormal refractive and accommodative and muscular conditions and co-ordination of the eye, in subjective and objective optometry, including the fitting of glasses, the principles of lens grinding and frame adjusting, and in such other subjects as pertain to the science and practice of optometry, such subjects to be enumerated in publication by the board. . . . All such applicants without discrimination, who shall satisfactorily pass such examination shall thereupon be registered in the board's register of optometrists and a certificate of registration shall be issued to them, under the seal and signature of the members of said board upon payment of a fee of five dollars. Such certificate shall continue in force until the first day of August in the year next succeeding."

Before engaging in practice it shall be the duty of each registered optometrist to notify the board in writing of the place or places where he is to engage or intends to engage in practice and of changes in such places.

There are other provisions intended to fortify those above mentioned, and violations of the act are made misdemeanors, with fines and imprisonment, increasing with repetition of the offense.

It is provided that the act shall not be construed to prevent duly licensed physicians and surgeons from treating the human eye nor to prohibit the sale of complete ready-to-wear eyeglasses as merchandise from a permanent place of business in good faith and not in evasion of the act by any person not holding himself out as competent to examine and prescribe for the human eye.

Registry certificates may be revoked for certain specified causes.

Complainant charges that the act offends the Fourteenth Amendment of the Constitution of the United States in that it deprives her of her property without due process of law and denies her the equal protection of the laws, and as specifications of the last she instances the exemption from the provisions of the act of licensed physicians and surgeons; the appropriation to the sole use of registered optometrists of the right to employ any means other than the use of drugs in the measurement of the powers or range of vision; the denial to all other schools of scientific learning and practice the right to measure the range of human vision other than by the use of drugs on equal terms with the physician and surgeon; and contends generally that her occupation being a lawful one, not hurtful to the individual or dangerous to the community, the State has no power to impose discriminatory regulations upon it.

She alleges her competency to practice her profession and apply its treatment, that appellees are threatening to enforce the law, and hence prays temporary and permanent injunctions.

These specific objections are brought down to the general objection that the statute discriminates against those who employ any other means than the use of drugs and, therefore, "creates a monopoly favored and protected by law, in the interest of practitioners who employ drugs in determining the accommodative and refractive states of the human eye."

To sustain the statute appellees adduce the police power of the State; against the statute complainant urges the Fourteenth Amendment and its prohibition of discrimination. The case requires, under the averments of the bill, adjustment of these contentions.

It is established that a State may regulate the practice

of medicine, using this word in its most general sense. *Dent* v. *West Virginia,* 129 U. S. 114; *Hawker* v. *New York,* 170 U. S. 189; *Reetz* v. *Michigan,* 188 U. S. 505; *Watson* v. *Maryland,* 218 U. S. 173; *Collins* v. *Texas,* 223 U. S. 288.

Complainant tries to escape from the rulings in those cases by asserting a discrimination against her. She is an opthalmologist, she avers, "which is a school of scientific learning and practice confined to the treatment of the inflammation of the eye and its membranes and in fitting glasses to the human eye," and that she has practiced her profession for the past three years, and does not employ medicine, drugs or surgery. She, however, attacks the statute because, to use the language of her counsel, it "arbitrarily discriminates against every other school of scientific knowledge and practice in favor of the school employing drugs in determining the accommodative and refractive states of the human eye." It undoubtedly does, but gives the name of the school that of "optometry" and its practitioners "optometrists." We cannot suppose that any injury is done her by the difference in names, and yet she gives no other tangible ground of complaint. Whether they are different and whether the difference is of substantial or unsubstantial degree she does not inform us. She practices one of them in preference to the other, and for the practice of that one the State has declared that its certificate of competency is necessary. The cases cited above establish that the State has such power and it requires no more of complainant than it requires of any other opthalmologist, to use her word, or of any other optometrist, to use the word of the statute.

The District Court was, therefore, right when it decided that on the averments of the bill complainant was not entitled to an injunction.

*Decree affirmed.*