STATE OF MISSOURI, RESPONDENT, v. ALF ETZENHOUSER, APPELLANT.*

Kansas City Court of Appeals.   April 29, 1929.

*Corpus Juris-Cyc. References: Commerce, 12CJ, section 141, p. 103, n. 69; Licenses, 37CJ, section 162, p. 269, n. 34.

*V. J. Danielson* for appellant.

*A. B. Lovam,* Assistant Attorney-General, for State.

*James R. Page,* Prosecuting Attorney, for State.

LEE, C.—Defendant was charged in the circuit court of Jackson county with a misdemeanor in practicing optometry without a certificate of registration, as required under the provisions of the Laws of Missouri 1921, at pages 532-540. The case was tried by the court without a jury, resulting in a conviction and fine of $25, from which judgment this appeal was taken.

A bill of exceptions was filed in this court and also a brief and argument by the Prosecuting Attorney of Jackson county and the Assistant Attorney-General of the State, on behalf of respondent, but appellant filed no brief.

The information reads as follows:

"Now comes James R. Page, Prosecuting Attorney for the State of Missouri, in and for the body of the county of Jackson and upon his oath informs the court, that Alf Etzenhouser whose Christian name in full is unknown to said Prosecuting Attorney, late of the county aforesaid, on the 19th day of May, 1928, at the county of Jackson, State of Missouri, did unlawfully and wilfully practice optometry without a certificate of registration as a registered optomotrist. The said Alf Etzenhouser did then and there so unlawfully practice optometry by the examination of the human eye without the use of drugs, medicines or surgery, to ascertain the presence of defects or abnormal conditions which can be corrected by the use of lenses and by the employment of objective mechanical means to determine the accommodative or refractive states of the human eye, or the range or power of vision of the human eye. The said Alf Etzenhouser, while so engaged in such unlawful practice of optometry, was not then and there. a physician or surgeon entitled to practice in this State, and was not then and there a person who sells eyeglasses or spectacles in a store, shop or other permanently established place of business or (on) prescription from persons authorized under the laws of this State to practice either optometry or medicine and surgery, and was not then and there a person who manufactures or deals in eyeglasses or spectacles in a store, shop or other permanently established place of business; against the peace and dignity of the State."

In general it follows the statute and is sufficient.

The evidence shows that defendant represented an optical company of Chicago, who furnished him with what was known as a self-testing device, at one end of which was a glass or lens through which the prospective purchaser would look at a sort of sliding chart, upon which were letters of different sizes. The test consisted of moving this back and forth until the smallest letter thereon focused most plainly to the eye looking through the lens; and the number then shown on the scale at the point where this sliding device thus stopped indicated the stock or record number of the lens required; and the order would then be sent in for glasses with lenses of this number. Defendant claimed and the evidence indicated that he made no examination whatsoever of the customer's eyes and did not even operate the device, which he left entirely to the customer. Defendant testified "that with this device he would have to test his own eyes, because I could not look through that and tell where it would stop—that he

said it focused to him. . . . Of course, when a man came and said he wanted to use that, look through it, I handed it to him. . . . If he put that up to his eye, and worked that focus, that is where he concluded that that glass suited him. . . . Absolutely, he done the testing." All he claimed to have done was to furnish the device for the use of those who wished to use it, and to take an order for the glasses desired in accordance with the customer's test of his own eyes. The customer would then pay a dollar down in part payment for the glasses, which were later mailed C. O. D. to the purchaser direct.

Defendant filed no brief in this court, but his defense is set forth in his demurrer to the evidence, filed at the close of the State's case, and in his motion for a new trial, both of which were overruled by the court, and which read as follows:

### "DEMURRER.

"NOW COMES, this defendant, by protestation, not confessing or acknowledging all or any of the matters and things in the said information mentioned to be true, in such manner and form as the same are herein and hereby set forth and alleged, demurs to said information, and for cause of demurrer shows, that the said Alf. Etzenhouser, defendant, has at no time practiced Optometry in the State of Missouri, nor has he fitted glasses, or examined the vision of the human eye.

"That said sale glasses by defendant within (?) is purely a matter of INTERSTATE BUSINESS. Also that the complainant has not, by the evidence made or stated such a case against this defendant.

"WHEREFORE, this defendant demurrers to the said complaint, and to all matters and things therein contained, and prays the judgment of this honorable court, and that the charge against him may be dismissed."

### "MOTION FOR NEW TRIAL AND ARREST OF JUDGMENT.

"Comes now, the defendant Alf. Etzenhouser by his attorney in the above-entitled cause, and moves the court for a new trial, and says; that on the 27th day of June, 1928, judgment was rendered against him for an alleged breach of the laws of Optometry within this State; said defendant sets out, that said judgment was against the weight of authority and the evidence presented in this, to-wit:

"That said defendant was not engaged in the practice of Optometry; that defendant did not make an examination of the human eye, as set out in the information, that the evidence will show that said defendant was then and there selling glasses as provided in 'Session Acts 1921, sec. 6, pars. B. and C.' which permits the sale of eyeglasses in stores and other permanently established places of business; that the said True-Fit Optical Co., 301 Laflin St., Chicago,

Illinois, was such; that said defendant sold eyeglasses directly from said store, that said glasses were delivered from said store to the customer; that said contrivance for testing the eyes of the customer, was manipulated by the customer in person, the defendant taking no part whatever in such manipulation, his only act was that of writing the order after the customer had decided the number of the glasses he wanted, which order was forwarded to store in Chicago, and from there sent direct to the customer who made payment when he received the goods; that said transactions constitute Interstate Commerce and are not subject to the provisions of the local law or ordinances; Krenshaw v. Arkansas, 227 U. S. 389; Caldwell v. North Carolina, 187 U. S. 662, hold that transactions of this character are unquestionably a matter of Interstate Commerce.

"Wherefore defendant prays that this court will grant him a new trial for the reasons heretofore set out, and to the end that this matter may be more fully considered."

Appellant rests his defense, first, on the ground that he was not engaged in the practice of optometry within the meaning of the statute, and secondly, that his only act was that of writing an order for goods, which was forwarded to and filled from the Chicago store, and that the transaction therefore constituted interstate commerce. He does not directly attack the constitutionality of the act, the decision of which would not be within the jurisdiction of this court; but on this point respondent cites the following cases in support of the law: [State ex rel. Hallen v. Utah State Board of Examiners in Optometry, 37 Utah, 339, 108 Pac. 347; Ex parte Rust (Cal.), 183 Pac. 548; McNaughton v. Johnson, 242 U. S. 344, 37 S. Ct. 178, Ann. Cases 1917B, 801.]

The evidence of the acts relied on by the State to sustain the prosecution was not controverted and was sufficient to sustain a conviction if, in fact, the act shown constituted a practice of optometry within the meaning of the statute. The statute provides as follows:

"Sec. 5. Any one of any combination of the following practices constitutes the practice of optometry:

"(a) The examination of the human eye, without the use of drugs, medicines or surgery, to ascertain the presence of defects or abnormal conditions which can be corrected by the use of lenses, prisms or ocular exercises.

"(b) The employment of objective or subjective mechanical means to determine the accommodative or refractive states of the human eye or the range or power or vision of the human eye.

"(c) The prescription or adaptation without the use of drugs, medicines or surgery, of lenses, prisms, or ocular exercises to correct defects or abnormal conditions of the human eye or to adjust the human eye to the conditions of special occupation.

. . . . . .

"Sec. 6. Exempt from operation of act.—The following persons, firms and corporations are exempt from the operation of this act:

"(a) Physicians or surgeons of any school lawfully entitled to practice in this State.

"(b) Persons, firms and corporations who sell eyeglasses or spectacles in a store, shop or other permanently established place of business on prescription from persons authorized under the laws of this State to practice either optometry or medicine and surgery.

"(c) Persons, firms and corporations who manufacture or deal in eyeglasses or spectacles in a store, shop or other permanently established place of business."

We are of the opinion that the trial court was justified in finding that the acts in question come within the prohibition of the statute, and that defendant did "employ objective mechanical means to determine the accommodative or refractive states of the human eye, or the range or power of vision of the human eye." It may be true that he did not himself manipulate the device with his own hands, but he furnished the device to the customer or patient, and either explained to them how to operate it or referred them to the printed directions thereon for the purpose. The patient himself, operating the device according to these directions, would then determine when he obtained the best vision. As a series of acts this is not greatly different from those of a regular oculist, who places a chart on the opposite wall, and either turns a given lens, or places a series of lenses, in front of the eye of the patient. In either case the patient himself must give the ultimate information as to when he gets the best vision. Either directly or by implication defendant gave his patient or customer to understand that the testing lens which he furnished him and the device in connection with which it was used would correctly indicate the particular lenses required for satisfactory glasses.

The defense is made that appellant cannot in any event be prosecuted under this statute, because the transaction was a sale in interstate commerce, not subject to the provisions of the local law. The act for which defendant is being prosecuted is not the sale of the glasses, but the acts which preceded the sale and from which the patient or customer would determine whether or not he should make a purchase at all, and if so determined, what the particular article should be.

There was no evidence offered that defendant in fact did not have a certificate of registration as a registered optometrist, as required by the statute. Paragraph 15 (g) of the statute provides that "in every proceeding under paragraph (a) of this section an averment that the defendant at the time of the alleged offense was without the required certificate of registration, shall be taken as true, unless

disproved by the defendant." It has been repeatedly held in this State that where a defendant is indicted for doing an act without a license, the State is not bound to prove that he had no license; he must produce his license as a defense, if he has one; that being a matter peculiarly within his own knowledge. [State v. Parsons, 124 Mo. 436, 27 S. W. 1102, 46 Am. St. Rep. 457; State v. Quinn, 170 Mo. 176, 67 S. W. 974, 70 S. W. 1117.]

The only case similar to this one which has been brought to our attention, holding that the facts did not indicate a practice of optometry by the defendant, is that of Johnson v. State (Ala.), 113 So. 484. The statute involved in that case defined the practice of optometry as "the examination of the human eye for the purpose of ascertaining any departure from the normal, measuring its functional powers and adopting mechanical means for the aid thereof." In that case the acts upon which the prosecution was based were in soliciting and taking orders for eyeglasses, for which purpose it was testified in each case, "I did the fitting myself, he had samples of glasses from which I made my own selection." Apparently the defendant offered samples of the actual type of glasses which would be purchased. In effect it was merely a sale of goods by sample, and the court seems to have so regarded it. The statute was not so broad as is the Missouri law, nor did the defendant go so far as in the present case in furnishing and representing the functions of a device for testing the eyes, separate and different from the actual glasses themselves which were to be supplied. The Wisconsin court in Price v. State (Wis.), 171 N. W. 77, recognizes this distinction. The optometry law of that State exempts from its provisions "persons who shall sell spectacles from an established place of business without attempting to test the eyes." In holding the exemption valid and reasonable, while upholding the law and affirming a conviction, the court said:

"The intent of the Legislature in passing this law is not difficult of ascertainment. It was intended to prevent any one from practicing optometry, or from holding himself out as competent to practice optometry, until a license to do so had been secured as provided in the act. It was also intended to exempt from the provisions of the law persons who simply sold spectacles over the counter, where the customer makes his own selection, and there is no attempt on the part of the salesman to test the eyes. We so construe the statute."

The object of the law, in protecting the unwary from being imposed upon with glasses which would not only fail to serve the purpose expected of them, but which may be the cause of actual injury to health and nerves, is a beneficent and proper one. Such statutes should be liberally construed to carry out their purposes. [29 C. J. 243; Price v. State, supra.]

Finding no error in the case, the judgment should be affirmed. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by LEE, C., is approved and adopted as the opinion of the court. The judgment is accordingly affirmed. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.

