NEW JERSEY STATE BOARD OF OPTOMETRISTS, DEFENDANT IN CERTIORARI, v. S. S. KRESGE COMPANY, A BODY CORPORATE, PROSECUTOR.

Submitted January 26, 1934—Decided August 17, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For the prosecutor, *George S. Hobart* and *John J. Gaffey*.

For the defendant, *William A. Stevens*, attorney-general, and *Robert Peacock*, assistant attorney-general.

The opinion of the court was delivered by

HEHER, J.   Prosecutor invokes the jurisdiction of this court to review, by *certiorari*, a judgment of conviction entered in the First District Court of the city of Jersey City, upon a complaint charging that, in the month of October, 1932, at a retail store maintained by it in the city of Jersey City, in violation of the provisions of an act to regulate the practice of optometry (*Pamph. L.* 1914, *p.* 448), as amended by chapter 59 of the laws of 1919 (*Pamph. L.* 1919, *p.* 105) and chapter 75 of the laws of 1932 (*Pamph. L.* 1932, *p.* 124), it employed, gave aid and assisted one Carlock, an employe who was not possessed of the requisite authority, "to

practice optometry within the meaning of section one of said act, * * * contrary to and in violation of section twenty-one of said act * * *." The statutory penalty for the first offense was assessed.

The facts are stipulated. Prosecutor is a foreign corporation engaged in the retail general merchandising business. Carlock was in charge of the notion counter in its Jersey City store. Among the goods displayed for sale on this counter were spectacles which retailed at twenty-five cents each. Concededly, these spectacles were designed to serve as an aid to human vision. They consisted of celluloid frames of uniform size, with a pair of lenses. There was an assortment of spectacles, and the lenses varied in power or focus. There was attached to each a paper tag or paster containing numbers indicating the focal distance of the lens, the distance being measured both by inches and by diopters. The transactions which furnished the basis for the complaint consisted of sales of spectacles by Carlock, who was not authorized to practice optometry in this state, to agents of the defendant board. It is conceded that, in accordance with instructions given by prosecutor to its various store managers, no advice, aid or assistance, in the selection of the spectacles so sold, was given to the purchasers by Carlock, or any other person in the employ of prosecutor. In response to the purchaser's inquiry as to whether "all the glasses were the same," Carlock replied, "No, they are all different and go by numbers;" and when the purchaser asked Carlock to indicate "what number she thought she [purchaser] needed for general use around the house," Carlock replied: "You will have to try on the glasses yourself, because I cannot help you; I can only sell the glasses to you." It is stipulated that, in respect of these transactions, prosecutor, "did not employ any means for the measurement of the powers of vision, or the adaptation of lenses or prisms for the aid thereof; did not use testing appliances for the purpose of the measurement of the powers of vision; did not diagnose any ocular deficiency or deformity, visual or muscular anomaly of the eyes of said customers, or either of them; did not prescribe lenses, prisms or ocular exercise for the correction

or relief thereof; and did not hold themselves out as qualified to practice optometry, or in any way advertise themselves as an optometrist." Respondent maintains, however, that prosecutor's agents employed "means for measurement of the powers of vision and adapted lenses or prisms for the aid thereof in that they sold the glasses, which were of different strength and different numbers, to fit the eyes of persons making the purchases," and thus practiced optometry within the statutory definition.

Prosecutor insists that these transactions did not constitute the unlawful practice of optometry, within the intendment of the statute, and that, therefore, the judgment is without factual support; that if a contrary construction be adopted, the legislation "amounts to an interference with defendant's right of property, and to the taking of defendant's property without due process, in violation of both the state and federal constitutions;" and that, in any event, "the statute on its face violates the state and federal constitutions," in that (a) the standard of conduct prescribed therein is so indefinite as to amount to a delegation of legislative power; (b) the penalties imposed are unreasonable and excessive, and (c) it unduly interferes with prosecutor's right "to acquire, possess and protect property, and deprives" it "of its property without due process."

While a determination of the constitutional questions raised may, perhaps, be unnecessary, in view of our conclusion that the statute is inapplicable to the situation here presented, we are of opinion that the public interest requires that this fundamental challenge should not be passed *sub silentio,* and we therefore proceed to consider it.

It is said that the statute, if construed to bar "the right to sell" spectacles under the circumstances here presented, would be an unreasonable exercise of the police power. We are unable to subscribe to this view. The right to practice medicine, and kindred professions for the treatment of human ailments, is subject to the paramount power of the state to impose such regulations, within constitutional limits, as may be required to protect the people against ignorance and incapacity, as well as deception and fraud. The state, in the exercise of

the police power, has the undoubted right to regulate the practice of such professions for the protection of the lives and health of the people. It may prescribe that only persons possessing the requisite qualifications of learning and skill shall practice these professions. But the laws adopted must be reasonable and appropriate to that end. *Dent* v. *West Virginia,* 129 *U. S.* 114; 9 *Sup. Ct.* 231; 32 *L. Ed.* 623; *Lambert* v. *Yellowley,* 272 *U. S.* 581; 47 *Sup. Ct.* 210; 71 *L. Ed.* 422; *Graves* v. *Minnesota,* 272 *U. S.* 425; 47 *Sup. Ct.* 122; 71 *L. Ed.* 331.

And a statute prohibiting the sale at retail, in any store or established place of business, of "any spectacles, eyeglasses, or lenses for the correction of vision, unless a duly licensed physician or duly qualified optometrist  *  *  *  be in charge of and personal attendance at the booth, counter or place, where such articles are sold in such store or established place of business," is a valid exercise of the police power. *Roschen* v. *Ward,* 279 *U. S.* 337; 73 *L. Ed.* 722. A state may, in the exercise of its police power, confine to registered optometrists, who have demonstrated their qualifications by passing the examination prescribed by the statute, the right to employ means other than drugs to measure the range of human vision, and the accommodative and refractive states of the human eye. *McNaughton* v. *Johnson,* 242 *U. S.* 344; 37 *Sup. Ct.* 178; 61 *L. Ed.* 352. See, also, *Commonwealth* v. *Houtenbrink,* 235 *Mass.* 320; 126 *N. E. Rep.* 669; *Commonwealth* v. *S. S. Kresge Co.,* 267 *Mass.* 145; 166 *N. E. Rep.* 558; *Harris* v. *State Board of Optometrical Examiners,* 287 *Pa.* 531; 135 *Atl. Rep.* 237. That the practice of optometry bears a reasonable relation to the public health and welfare cannot be doubted. There is a known relation between many ailments and impaired eyesight. They disappear when the defects of vision are corrected by suitable glasses. "To properly diagnose and prescribe for the particular defect from which the patient is suffering requires a knowledge of the anatomy of the eye as well as the subject of physical optics, being that branch of the general subject of physics which deals with the action or effect of lenses on light, and how light is directed, reflected and refracted."

*Price* v. *State*, 168 *Wis.* 603; 171 *N. W. Rep.* 77.   Considerations of public policy require that oculists and ophthalmologists, who practice what has been termed "a learned profession," and optometrists, who pursue what has been described as "an occupation or vocation calling for a degree of mechanical skill and experience" (*Saunders* v. *Swann*, 155 *Tenn.* 310; 292 *S. W. Rep.* 458), shall demonstrate the skill and experience requisite for practice in their respective fields.

And the claim that the act unlawfully delegates legislative power is likewise without substance.   We find no delegation of this exclusive legislative function.   The statute is complete in itself, and there is no attempt to vest in the defendant board authority that is essentially legislative.   It meets, in every respect, the test of validity laid down by Chief Justice Gummere:  "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact, or state of things, upon which the law makes, or intends to make, its own action depend."   *West Jersey and Seashore Railway Co.* v. *Public Utility Board*, 87 *N. J. L.* 170.   The prescribed "standard of conduct" is not, as contended, vague and indefinite.   The acts constituting the "practice of optometry" are clearly and definitely stated.   The term "optometry" has a technical significance, and there is, as we shall see, little or no departure from the technical meaning in the statutory definition.   Those to be guided by this legislation are not left in doubt as to what constitutes the unlawful practice of optometry.

Nor are the penalties provided unreasonable.   The act prescribes a penalty of $200 for the first offense, and $500 for each subsequent offense.   This was clearly not an abuse of the power vested in the legislature.   The penalties so imposed are not so arbitrary and oppressive as to constitute a taking of property without due process of law, in contravention of the fourteenth amendment of the federal constitution.   The proposition that because it is unprofitable, in a pecuniary sense, to do repeatedly that which is forbidden by the legislature, in the exercise of the police power to promote the public health and welfare, there is an unconstitutional deprivation of property is novel indeed.

But the transactions in question do not come within the condemnation of the statute. They do not constitute the practice of optometry, as therein defined. Section 22 of the act of 1914, as amended by chapter 75 of the laws of 1932 (*Pamph. L.* 1932, *pp.* 124, 128), makes subject to the statutory penalty "any person, company or association who shall employ  *  *  *  or give aid or assist," any unauthorized person to practice optometry, as therein defined. The statutory definition follows. *Pamph. L.* 1932, *p.* 124, § 1:

"The practice of optometry is defined to be the employment of objective and/or subjective means for the examination of the human eye for the purpose of ascertaining any departure from the normal, measuring its powers of vision and adapting lenses and/or prisms for the aid thereof. Any person shall be deemed to be practicing optometry within the meaning of this act who in any way advertises himself as an optometrist, or who shall employ any means for the measurement of the powers of vision or the adaptation of lenses or prisms for the aid thereof, practice, offer or attempt to practice optometry as herein defined, either on his own behalf or as an employe or student of another, whether under the personal supervision of his employer or preceptor or not, or to use testing appliances for the purpose of the measurement of the powers of vision or diagnose any ocular deficiency or deformity, visual or muscular anomaly of the human eye or prescribe lenses, prisms or ocular exercise for the correction or the relief of same or who holds himself out as qualified to practice optometry."

While there is no proof as to what constitutes the practice of optometry, the term has a well-established technical significance, of which we may take judicial notice, that is not substantially at variance with the statutory definition. The term "optometry" is defined thus: "1. Measurement of the range of vision, especially by means of the optometer. 2. As defined (with minor variations) in the statutes of various states of the United States: (a) The employment of subjective and objective mechanical means to determine the accommodative and refractive states of the eye and the

scope of its functions in general; (b) the employment of any means, other than the use of drugs, for the measurement of the powers of vision and adaptation of lenses for the aid thereof." *Webster's New International Dictionary.*

Oculists and ophthalmologists pursue a calling quite distinct from that of optometrists. The first has relation to the practice of medicine and surgery in the treatment of diseases of the eye, and the second to the measurement of the powers of vision, and the adaptation of lenses for the aid thereof. *Saunders* v. *Swann, supra; Martin* v. *Baldy,* 249 *Pa.* 253; 94 *Atl. Rep.* 1091; *McNaughton* v. *Johnson, supra; Herzog's Medical Jurisprudence,* § 120. It is the primary function of the optometrist to employ means to determine the need of lenses for the correction of defects of eyesight, and the increase of the power and range of vision. He forms a judgment as to the need, and then provides the corrective lens.

The practice of optometry, therefore, does not include the mere sale, without more, of spectacles, glasses or lenses designed to aid human vision. And this is patently the statutory sense of the term. The statutory classification connotes the employment by the practitioner of means, objective or subjective, for the examination of the eye to determine its visual power, and the adaption of lenses or prisms for the correction of discovered defects or deficiencies. The statute was not intended to apply to' the sale of spectacles, eyeglasses or lenses as merchandise, or to the mere sale of such to an individual for use in the correction of his defects or deficiencies of vision, or for the alleviation of the consequences thereof. As we have pointed out, this power, to reasonably regulate the sale of lenses designed to correct vision, indubitably resides in the legislature, but it did not choose to exercise it. If that were its purpose, it would undoubtedly have chosen apt language to express it, as in *Roschen* v. *State, supra,* and *Commonwealth* v. *S. S. Kresge Co., supra.* This is a penal statute, and, on familiar principles, it will not be construed to apply, in the absence of a clearly expressed legislative purpose to that effect, to the mere sale of lenses designed to strengthen vision.

Nor are we led to a different result by the concluding provision of the section that it shall not be construed to apply to "the sale of toy glasses or goggles consisting of plano-white or plano-colored lenses or ordinary colored glasses," or to "duly licensed physicians and surgeons authorized to practice medicine under the laws of the state * * *."

This is, in form, an interpretation clause, but defendant maintains that it is, in substance and effect, a proviso or an exception which, under a familiar rule, is an affirmation of the application of the statute to all other cases not excepted, and thus excludes from the category of permissible transactions the sale, by an unlicensed person, under the circumstances here presented, of lenses designed to aid vision. While there is a technical distinction between a proviso and an exception, there is little or no practical difference between them. The distinction has been stated thus: An exception *exempts,* absolutely, from the operation of an engagement or an enactment; a proviso defeats their operation, *conditionally.* An exception takes out of an engagement or enactment something that would otherwise be part of the subject-matter of it; a proviso avoids them by way of defeasance or excuse. *Plowd.* 361; 1 *Saund.* 234 *a.* The law, however, does not attach a fixed and invariable meaning to a proviso. Its function, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought within its purview. *Austin* v. *United States,* 155 *U. S.* 417; 15 *Sup. Ct.* 167; 39 *L. Ed.* 206; *Lewis' Sutherland Statutory Construction* (2d ed.), § 351. An exception differs from a proviso in that the exception exempts something absolutely from the operation of the statute by express words in the enacting clause, while a proviso follows the enacting clause, and serves to defeat its operation conditionally. *Western Assurance Co.* v. *J. H. Mohlman Co.,* 83 *Fed. Rep.* 811; 40 *L. R. A.* 561; *Rowell* v. *Janvrin,* 151 *N. Y.* 60; 45 *N. E. Rep.* 398; 59 *C. J.* 1092.

But the guiding principle, after all, in the interpretation

of statutes, is to ascertain and effectuate the legislative intention and purpose. The intent is the essence of the law. Such distinction as there is will be wholly disregarded, if necessary to give effect to the manifest intention of the legislature as disclosed by the entire act, and acts in *pari materia*. *Rogers* v. *Brown,* 20 *N. J. L.* 119; *Lanning* v. *Administrator of Lanning,* 17 *N. J. Eq.* 228, 233. All doubt should be resolved in favor of the general provision rather than the proviso or exception. Provisos and exceptions are to be strictly but reasonably, construed. *Piedmont & N. Ry. Co.* v. *United States,* 30 *Fed. Rep.* (2d) 421; *State* v. *Forney,* 108 *Ohio St.* 463; 141 *N. E. Rep.* 16. It is not the function of a proviso to enlarge the enacting clause or confer a power. Such a clause in an "act cannot be construed to enlarge it, and extend its terms beyond the clear meaning and accepted signification of the body of the act." *Van Reipen* v. *Jersey City,* 58 *N. J. L.* 262, 267; *Lanning* v. *Administrator of Lanning, supra; People* v. *Continental Beneficial Association,* 289 *Ill.* 40; 124 *N. E. Rep.* 352. In Lanning *v.* Administrator of Lanning, Chancellor Green held (at *p.* 234) that the "proviso of a statute is generally intended to restrain the enacting clause and to except something which would otherwise have been within it, or, in some measure, to modify the enacting clause. It is a limitation of, or exception to, the authority conferred." Its office is "to limit and restrict the operation of the enacting clause." *Patterson* v. *Winn,* 11 *Wheat.* 380; 6 *L. Ed.* 500; *Murray* v. *Gault,* 179 *Ind.* 658; 101 *N. E. Rep.* 632; *Com.* v. *Charity Hospital,* 199 *Pa.* 119; 48 *Atl. Rep.* 906; *Lewis' Sutherland Statutory Construction* (2d ed.), § 351.

And while it is a generally accepted rule of construction that an exception of a particular thing from the general words demonstrates that, in the opinion of the lawgiver, the thing excepted would be within the general provision had the exception not been made (*Brown* v. *Maryland,* 25 *U. S.* 419, 438; 6 *L. Ed.* 678, 685), it is of necessity subordinate to the cardinal canon of construction that the intention of the lawmakers shall be ascertained and effectuated. Such

rules of construction are designed to aid in the discovery of the legislative intent. It has been held that while an exception may properly be considered in ascertaining the true meaning of the statute, "it cannot put into the previous provision something which was not there before." *Batcheller-Durkee* v. *Batcheller, 39 R. I.* 45; *97 Atl. Rep.* 378; *L. R. A.* 1916 *E* 545.

The duty resting upon the courts is so to construe a statute as to give full effect to all the words in their ordinary sense, if this can be properly done, and thus to preserve the harmony of all its provisions. *Bend* v. *Hoyt, 13 Pet.* 263; 10 *L. Ed.* 154. The true principle is that the sound interpretation and meaning of the statute, on a view of the enacting clause, saving clause and proviso, taken and construed together, is to prevail. *Lewis' Sutherland Statutory Construction* (*2d ed.*), § 350. Provisos and exceptions are to be construed with the enacting clause, so as to carry out the intention of the legislature. "The enacting clause is the principal part of the statute, and is presumed to have embodied the main object of the act * * *." *People* v. *Andrus, 299 Ill.* 50; 132 *N. E. Rep.* 225. Provisos are to be given a rational construction in harmony with the ascertainable general purpose and intent of the enactment, considered in its entirety, aided, when possible, by any other legislation in *pari materia. Kelley* v. *Boyne, 239 Mich.* 204; 214 *N. W. Rep.* 316; 53 *A. L. R.* 273. In this case it was held that the proviso clause "reasonably can and should be construed as intended to exclude possible misinterpretation of the scope of the enactment."

And here it is evident that the clause in question, considered in the light of the object and policy of the enacting provisions, was introduced, out of an abundance of caution, to avoid possible misinterpretation of the act. If it be construed as indicating a legislative purpose to classify, as the practice of optometry, all such transactions not specifically excepted, traffic in spectacles and lenses of every character and description would necessarily fall within the statutory definition, and this was patently not the legislative purpose.

Concededly, Carlock did nothing more than make sale of lenses designed to aid human vision. She did not examine, or pretend to examine, the eye of the purchaser for the purpose of determining the need of a corrective lens, or make, or presume to make, a diagnosis, or employ testing appliances or other means to measure the power and range of vision. Prosecutor provided an assortment of lenses, varying in power or focus, and the purchaser made his own selection, without the advice, aid or assistance of prosecutor's agent in charge. True, the focal distance, measured by inches and diopters, was indicated by a number attached to the lens, and thus the refractive power of the lens was conveyed to its patron seeking an increase in visual power. But this clearly does not constitute the practice of optometry. The participation of the servant, and, by derivation, that of the employer, in the transaction in question, was not essentially different from that of the salesman who makes sale, for the personal use of the purchaser, of an article of wearing apparel containing a number or other symbol indicating its size. He does not thereby represent that it will fit the purchaser—only that it is of the size denoted by the symbol. So the vendor in the instant case did not represent that the lenses would suit the eyes of the purchaser—the representation was merely that they had the refractive power signified by the trade token. The vendor did not thereby employ (in the language of the statute) "means for the measurement of the powers of vision, or the· adaptation of lenses or prisms for the aid thereof." The defendant board acknowledges that these transactions are not embraced within this statutory definition. It is so stipulated. And there is clearly no other statutory provision constituting such acts the practice of optometry. It follows that the conviction must be set aside.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.