Betty PECKMANN, et al., Plaintiffs,

v.

Robert THOMPSON, et al., Defendants.

No. 89–2344.

United States District Court,
C.D. Illinois.

Sept. 19, 1990.

Edward Zukosky, Wenona, Ill., George F. Taseff, Jennings Novick Eggan & Ostling, Bloomington, Ill., William C. Zukosky, Urbana, Ill., for plaintiffs.

Randy E. Blue, Asst. Atty. Gen., Springfield, Ill., for Robert Thompson, Bernard Turnock and Neil Hartigan.

## ORDER

BAKER, Chief Judge.

The plaintiff, Betty Peckmann, is a traditional midwife who has been practicing midwifery since the mid–1950's. Peckmann's co-plaintiff, Kim Perry, seeks to enter the practice of traditional midwifery and is currently serving as an apprentice to a traditional midwife. Peckmann's other co-plaintiffs, William and Kimberly Dick, are a couple that wish to have children with the aid of a traditional midwife. The defendants are: Robert Thompson, Director of the Illinois Department of Professional Regulation, Bernard Turnock, the Director of the Illinois Department of Public Health,

Neil Hartigan, the Illinois Attorney General, and several State's Attorneys from various Illinois counties. The plaintiffs bring this action under 42 U.S.C. § 1983, seeking a court order requiring Illinois to recognize traditional midwifery and a declaratory judgment declaring the Illinois Medical Practice Act of 1987, Ill.Rev.Stat. ch. 111, para. 4400-1—4400-63 (1989), unconstitutional.

This matter is before the court on the defendants' motion to dismiss.

### Facts

On December 8, 1988, a grand jury in Christian County, Illinois, indicted the plaintiffs, Peckmann and Perry, and charged them with practicing medicine without a license in violation of Ill.Rev. Stat. ch. 111, para. 4400-50 (1987). Prior to their trial, Peckmann and Perry agreed to file this civil action to obtain a ruling on the constitutionality of the Illinois Medical Practice Act in exchange for the dropping of the charges. The Dicks joined the plaintiffs, and suit was filed in this court in November, 1989.

### Jurisdiction

■ Before reviewing the merits of the defendants' motion, the court must satisfy itself that a case or controversy exists. In their oral argument, the defendants hinted that the plaintiffs lacked standing to bring this complaint and that the plaintiffs' complaint was not ripe for review. The Court disagrees.

To have standing, the plaintiffs "must show that [they] personally have suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[s]; and that the injury is likely to be redressed by a favorable decision." *Oriental Health Spa v. City of Ft. Wayne,* 864 F.2d 486, 489 (7th Cir.1988) (quoting *Heckler v. Matthews,* 465 U.S. 728, 738, 104 S.Ct. 1387, 1394, 79 L.Ed.2d 646 (1984)). In the present case, the plaintiffs are contesting the constitutionality of a criminal statute. The Supreme Court has held that plaintiffs need not first expose themselves to actual arrest or prosecution before chal-

lenging such a criminal statute's constitutionality. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). In any event, in this case, the plaintiffs were actually indicted under the challenged Act and threat of prosecution under the Act continues to loom over them. Thus, the plaintiffs have standing to challenge the statute.

■ Similarly, the court concludes that the plaintiffs' challenge to the Act is ripe for review. Where the constitutionality of a state law is in question, a number of factors govern whether the "substantial controversy" threshold of ripeness has been reached. *Wisconsin's Environmental Decade, Inc. v. State Bar of Wisconsin,* 747 F.2d 407, 411 (7th Cir.1984). These include the magnitude of the threat that the challenged law will actually be enforced against the plaintiff, the nature of the consequences risked by the plaintiff if the challenged law should be enforced against him, and whether the plaintiff has actually been forced to alter his conduct as a result of the law under attack. *Id.*

In *Wisconsin's Environmental Decade,* the Seventh Circuit upheld a district court's dismissal on ripeness grounds of a challenge to a Wisconsin statute prohibiting the unauthorized practice of law. In that case, the plaintiff for many years had participated in administrative proceedings before the Wisconsin Public Service Commission. After the State Bar of Wisconsin threatened to recommend that the plaintiff be charged with the unauthorized practice of law, the plaintiff filed suit. The Seventh Circuit noted that, though the plaintiff sought to challenge the constitutionality of a criminal statute, there was no threat of criminal prosecution, nor was there any change in the plaintiff's conduct as a result of the law. *Id.* Thus, the case was not ripe.

In contrast, the plaintiffs in this case are under the threat of criminal prosecution by the State of Illinois. In fact, two of the plaintiffs were actually indicted. Thus,

there is a "substantial controversy," and the case is ripe.

## Discussion

### I.

The plaintiffs assert that the defendants' actions violate several of their constitutional rights, including the right to equal protection and privacy. For any of these claims ultimately to succeed, however, the Court must find that the plaintiffs have a constitutional right to practice midwifery, or to avail themselves of that profession's services, and that Illinois has impermissibly interfered with that right. Instead, the Court finds that Illinois acted within its constitutional police power limits in amending its Medical Practice Act.

■ The Supreme Court repeatedly has held that states are empowered, under their police power, to prescribe the qualifications of who may practice medicine, using that term in its broadest sense to include all the healing arts. *See, e.g., Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (prohibiting opticians from filling lenses without written prescription of optometrist or ophthalmologist); *Douglas v. Noble*, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923) (licensing dentists); *McNaughton v. Johnson*, 242 U.S. 344, 37 S.Ct. 178, 61 L.Ed. 352 (1917) (excluding ophthalmologists from optometry); *Collins v. Texas*, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439 (1912) (licensing osteopaths). This authority of states to regulate the practice of the healing arts includes the power to set up licensing boards to admit or exclude persons from the profession. *See Douglas v. Noble*, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923); *Collins v. Texas*, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439 (1912); *Watson v. Maryland*, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910); *Reetz v. Michigan*, 188 U.S. 505, 23 S.Ct. 390, 47 L.Ed. 563 (1903). Such regulation does not violate the rights of those who wish to avail themselves of the services of an excluded or regulated profession. Although persons may enjoy a right to seek or reject medical treatment generally, *cf. Cruzan v. Missouri Dep't of Health*, —— U.S. ——, 110 S.Ct. 2841, 2851, 111 L.Ed.2d 224 (1990) (there is a constitutional "liberty interest" in refusing unwanted medical care), there is no constitutional right to select a particular treatment or procedure over the rational objections of a governmental licensing authority. *See Rutherford v. United States*, 616 F.2d 455, 457 (10th Cir.1980) (upheld FDA's ban of Laetrile for the treatment of cancer).

■ The profession of midwifery is no different from the other healing arts,[1] and is not entitled to any special constitutional treatment. Although a state may not impose upon midwifery an irrational regulatory scheme, a state has broad powers to determine the proper amount of state involvement in its practice. Illinois may decide whether or not to require a license to practice midwifery. If Illinois elects to require a license, it may decide what qualifications a person must have to receive a license as well as what sort of treatments or procedures a midwife may perform.

■ Under the 1987 Medical Practice Act, Illinois eliminated the separate licensing procedure for midwives which it had previously employed. *Compare* Ill.Rev. Stat. ch. 111, para. 4400–1—4400–63 (1989) *with* Ill.Rev.Stat. ch. 111, para. 4401—4478 (1985). Although the wisdom of the change in the treatment of midwives may be debated, there is nothing in the Constitution which prohibits Illinois from rationally exercising its police power towards midwives; the Constitution does not demand that midwifery be recognized or licensed in Illinois.

### II.

To note that the state has the constitutional authority to regulate a particular

---

1. In describing the state's authority to regulate the medical field, the Supreme Court has held that it intends the term "medicine" to be used in its "most general sense" to include all the healing arts. *McNaughten v. Johnson*, 242 U.S. 344, 348–49, 37 S.Ct. 178, 179–80, 61 L.Ed. 352 (1917). Accordingly, Illinois has long dealt with midwifery under this broad power to regulate the healing arts. *See, e.g., Board of Health v. Arendt*, 60 Ill.App. 89 (1895).

profession, however, does not dispose of this case. The plaintiffs assert that, even if Illinois has the power to regulate midwives, the 1987 Medical Practice Act does so by way of an impermissibly vague penal statute in violation of their right to due process.[2] After careful review, the Court agrees and finds that, though this matter is before the Court on the defendants' motion to dismiss, no further briefing of the issues would be helpful and that declaratory judgment for the plaintiffs is appropriate.[3]

The dangers of vague laws were clearly articulated by the Supreme Court in *Grayned v. City of Rockford:*

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

408 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (citations omitted).

In applying these standards, the Supreme Court has held that the "degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Hoffman Estates v. Flipside,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1981). Thus, the Court has expressed greater tolerance for vague regulations in

the economic area, for those that impose only civil penalties, and for those containing a scienter requirement. *Id.* at 498–99, 102 S.Ct. at 1193. In addition, vagueness challenges that do not involve the first amendment, or other constitutionally protected conduct, are to be examined in light of the facts of the case at hand, *i.e.,* "in the light of the conduct with which a defendant is [actually] charged." *United States v. National Dairy Corp.,* 372 U.S. 29, 33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1962); *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1974). Thus, a plaintiff whose conduct is clearly proscribed by a statute cannot complain that the statute is vague with regard to some other, hypothetical conduct. Finally, where a statute imposes criminal penalties, the Court has held that the standard of certainty is higher and that a criminal statute may be invalidated on its face "even when it could conceivably have some valid application." *Kolender v. Lawson,* 461 U.S. 352, 359 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1982) (citing *Colautti v. Franklin,* 439 U.S. 379, 394–401, 99 S.Ct. 675, 685–89, 58 L.Ed.2d 596 (1979) and *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939)).

■ Here, the Illinois Medical Practice Act provides for the qualification, examination and licensure of three categories of practitioners: medical, osteopathic and chiropractic. *See* Illinois Medical Practice Act of 1987, Ill.Rev.Stat. ch. 111, para. 4400–11—4400–21 (1989). Paragraphs 4400–49 and 4400–50 purport to prohibit an unlicensed person from holding himself out to the public "as being engaged in diagnosis or treatment of ailments of human beings" or from actually performing the "practice of medicine." The relevant portions of both paragraphs are set out below.[4] A violation

---

**2.** The plaintiffs also contend that the Act is overbroad. Because the Court concludes that the Act does not reach constitutionally protected conduct, this argument is without merit. Of course, the plaintiffs may nevertheless challenge the Act on its face as unduly vague. *Hoffman Estates v. Flipside,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362 (1981).

**3.** "... a district court may grant summary judgment for a party without a motion, when the outcome is clear, so long as the opposing party has had an adequate opportunity to respond." *Smith v. DeBartoli,* 769 F.2d 451, 452 (7th Cir. 1985).

**4.** Para. 4400–49:

of either paragraph constitutes a Class 4 felony for a first offense and a Class 3 felony for any subsequent offense. *Id.* at para. 4400–59. The Act neither mentions "midwifery" nor defines "practice of medicine in all of its branches" or "ailments of human beings."

The Act imposes criminal penalties, without a scienter requirement, in a non-economic context. Thus, the statute must meet a high standard to pass a vagueness challenge. *Hoffman Estates,* 455 U.S. at 498–99, 102 S.Ct. at 1193. Also, although the Act does not reach constitutionally protected conduct, the plaintiffs are challenging the statute on the grounds that it is vague with regard to the conduct with which they were actually charged. They are not asserting that some future application of the Act will impinge another's rights, and so need not demonstrate that the Act is vague in every possible application. *Mazurie,* 419 U.S. at 550, 95 S.Ct. at 714; *Kolender,* 461 U.S. at 359 n. 8, 103 S.Ct. at 1859 n. 8.

With these guidelines in mind, the court must determine whether the Act provides reasonable notice to persons of ordinary intelligence that their contemplated conduct is illegal. *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298. As noted, paragraph 4400–50 prohibits the "practice of medicine in all of its branches." Because the Act fails to define this term, and because its common understanding generally does not

encompass assisting the normal delivery of a healthy child,[5] the plaintiffs reasonably may have concluded that their conduct was not proscribed by that portion of the Act. Similarly, paragraph 4400–49 prohibits, among other things, the unlicensed treatment of any "ailments, or supposed ailments." Again, because that term is nowhere defined, and because its common understanding generally does not describe the condition of a pregnant woman without complications,[6] the plaintiffs reasonably may have concluded that their conduct was not proscribed by that portion of the Act.

Further, the 1987 Medical Practice Act eliminated all the references to midwives contained in the 1985 Medical Practice Act, which had specifically prohibited the unlicensed "practice [of] midwifery." *Compare* Ill.Rev.Stat. ch. 111, para. 4400–1— 4400–63 (1989) *with* Ill.Rev.Stat. ch. 111, para. 4401—4478 (1985). The plaintiffs reasonably may have concluded that this change indicated that the legislature no longer considered the practice of midwifery to be encompassed by the Act. There is no indication in the 1987 Act that the acts formerly prohibited as the unlicensed "practice [of] midwifery" are now prohibited as the unlicensed "practice of medicine" as that phrase is used in the 1987 Act. The new Act fails to make sufficiently clear whether midwifery, which formerly was specially licensed by the state, is now to be

---

If any person holds himself out to the public as being engaged in the diagnosis or treatment of ailments of human beings; or suggests, recommends or prescribes any form of treatment for the palliation, relief or cure of any physical or mental ailment of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift, or compensation whatsoever; or diagnoses or attempts to diagnose, operates upon, professes to heal, prescribes for, or otherwise treats any ailment, or supposed ailment, of another; or maintains an office for examination or treatment of persons afflicted, or alleged or supposed to be afflicted, by any ailment; ... and does not possess a valid license issued to pursuant to this Act, he shall be sentenced as provided....

Para. 4400–50:

Any person who practices medicine in all of its branches, or treats human ailments without the use of drugs or operative surgery

without a valid license under the laws of this State shall be sentenced as provided....

5. As noted in § I, *supra,* the Supreme Court has held that in determining the outer scope of a state's authority to regulate the "practice of medicine," the term may be considered in its widest sense to include all the healing arts and all the branches of medicine. When actually imposing specific criminal penalties pursuant to this broad authority, of course, a state must more precisely define what conduct it deems illegal. Although "mathematical certainty" is not demanded, *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300, using a sweeping and open-ended term will not do. *Id.*

6. An ailment is defined in the dictionary as "a bodily sickness, disorder, or chronic disease." Webster's International Dictionary (15th ed. 1966).

wholly unregulated, or flatly prohibited, or something in between.

Finally, the Supreme Court has held that, in some contexts, a federal court should examine how the disputed words of a state statute have been interpreted by that state's courts when determining whether or not the statute's words are impermissibly vague. *See Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300. In this case, however, the state criminal proceeding based upon the plaintiffs' alleged violation of the Act was dismissed before any ruling was made. Moreover, the preceding Medical Practice Act, which authorized the licensing of midwives and specifically prohibited both the unlicensed "practice [of] midwifery" and the unlicensed "practice of medicine," was held to be impermissibly vague under the federal constitution by the state courts because it failed to define "practice [of] midwifery." *See People v. Jihan,* 127 Ill.2d 379, 388–89, 130 Ill.Dec. 422, 537 N.E.2d 751 (1989). Thus, looking to state law for help in determining what conduct is intended to be proscribed by the 1987 Act is unavailing.

The Act differs significantly from other states' medical regulations which have passed constitutional muster. For example, in *Bowland v. Santa Cruz Municipal Court,* 18 Cal.3d 479, 134 Cal.Rptr. 630, 556 P.2d 1081 (1976) (*en banc*), the California Supreme Court construed a state statute which prohibited the unlicensed treatment of any "ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other mental or physical condition of any person." *Id.* at 485, 134 Cal.Rptr. 630, 556 P.2d 1081. The court concluded that, though normal pregnancy was not a "sickness or affliction," it was a "physical condition" within the contemplation of the statute. *Id.* at 488–89, 134 Cal.Rptr. 630, 556 P.2d 1081 ("The term 'physical condition' is broad and, unlike the phrase 'sick and afflicted,' does not necessarily imply the existence of an abnormality or disease. It seems readily to encompass pregnancy and childbirth."). Accordingly, an unlicensed midwife assisting at a birth was found to be in violation of the statute. *Id.* The 1987 Illinois Medical Practice Act contains

no language subject to similar interpretation.

IT IS THEREFORE ORDERED that defendants' motions to dismiss (# 5, # 22) are denied. While it is constitutional for the State of Illinois to regulate or prohibit the practice of midwifery, it may not do so by vague enactment.

IT IS FURTHER DECLARED that Paragraphs 4400–49 and 4400–50 of the Illinois Medical Practice Act of 1987 are unconstitutional for reasons of vagueness.

The Clerk is ordered to enter judgment accordingly.