# Harris, Appellant, *v.* State Board of Optometrical Examiners.

*Optometry—License—Property right—Remedy where right invaded—Mandamus—Constitutional law—Due process of law.*

1. The right of an optometrist, duly licensed, to conduct his business or practice optometry, is a property right protected by the Constitution.

2. Where property rights so secured are unlawfully invaded by the legislature, directly or by one of its agents, the aggrieved person may appeal to the courts for redress.

3. Where the statute provides no right of appeal to the court from the determination of administrative tribunals on constitutional grounds, the right will be implied.

4. Where the licensing board in passing on an application for a renewal of the license, finds the applicant's record marked with a violation of the law, it becomes their duty to refuse his application, without reëxamining the charges. Unless otherwise provided by statute, the applicant's remedy is a proceeding in equity to enjoin the wrong.

5. A license once issued does not give the licensee an incontestable right of renewal.

*Optometry—Regulation of practice — Police power — Constitutional law—Classification — Peddling eyeglasses — Practice away from office—Acts of March 30, 1917, P. L. 21; May 19, 1923, P. L. 260, and May 13, 1925, P. L. 659.*

6. The legislature may define and regulate the practice of optometry, and, to that end, prescribe reasonable qualifications to be possessed by those who desire to engage in the practice, and to

provide reasonable means by which such qualifications may be ascertained to prevent those who do not possess them from practicing.

7. The purpose of the Act of March 30, 1917, P. L. 21, and its supplements of May 19, 1923, P. L. 260, and May 13, 1925, P. L. 659, regulating the practice of optometry, is a lawful exercise of the police power.

8. Provisions of the act forbidding a licensee from peddling from door to door, or from practicing optometry outside of or away from his office or place of business, or operating a branch office without the attendance of a licensed optometrician, are reasonable and proper regulations under the police power, in the interest of public health.

9. The legislature has power to classify and regulate itinerant peddlers.

10. While a licensed optometrician may practice away from his office, he must equip himself for so doing with proper instruments.

Argued September 27, 1926. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 3, May T., 1927, by plaintiff, from order of C. P. Dauphin Co., Commonwealth Docket No. 14, 1926, sustaining demurrer to petition for mandamus, in case of Adolph Harris v. State Board of Optometrical Examiners of the Department of Public Instruction of the Commonwealth, Thomas H. McKinley et al. Affirmed.

Petition for mandamus.
Demurrer to petition. Before Hargest, P. J.
The opinion of the Supreme Court states the facts.
Demurrer sustained. Plaintiff appealed.

*Error assigned* was, inter alia, order, quoting record.

*Joseph Stadtfeld,* for appellant.—The provision against peddling of glasses and practicing by a licensed optometrist away from his office or place of business is in contravention of section 1 of the 14th Amendment of the Constitution of the United States, as also of article I, section 1 of the Declaration of Rights of Pennsylvania,

in depriving him of property without due process at law, and denying him the equal protection of the laws: Dent v. West Va., 129 U. S. 114; Dobbins v. Los Angeles, 195 U. S. 233; Chenoweth v. State Board, 57 Col. 74, Am. An. Cas. 1915, D. P. 1188; White's App., 287 Pa. 259.

*Wm. Y. C. Anderson,* Deputy Attorney General, with him *George W. Woodruff,* Attorney General, for appellees.—The Act of March 30, 1917, P. L. 21, defining optometry and relating to its practice, was passed in pursuance of the Commonwealth's police power as set forth in the state and federal cases.

A peddler of optometrical goods, wares and merchandise, even though a qualified optometrist, is not authorized so to do; he is distinctly prohibited from practicing in that manner.

The exemptions contained in section 12 of the Act of March 30, 1917, and amendment in Act of March 13, 1925, deprive appellant of no vested right under either the state or federal Constitution: Mahon v. Coal Co., 274 Pa. 489; Nolan v. Jones, 263 Pa. 124.

OPINION BY MR. JUSTICE KEPHART, November 22, 1926:

This is an appeal from an order dismissing a mandamus proceeding to compel the State Board of Optometrical Examiners to issue a license to appellant for the year 1926 to practice optometry. Appellant has been engaged in that business for twenty years, having been continuously registered since 1918 under the Act of March 30, 1917, P. L. 21, as amended by the Act of May 19, 1923, P. L. 260, and May 13, 1925, P. L. 659. He was last licensed in the year 1925.

During that year a complaint was filed against him, charging violation of several of the provisions of the Optometry Acts, viz, (a) peddling eyeglasses from house to house and person to person, (b) practicing optometry outside of, and away from, his office or place of business. A day was fixed for hearing and appellant

was duly notified of it. At that time, he was given every opportunity by the state board to present evidence in his defense. None was presented and, after hearing, the charges were sustained and the license for 1925 was revoked. Before the formal notice of the decision reached appellant, he made application for a renewal for the year 1926. The check in payment of the fee therefor, was returned, accompanied by a notice of the board's action on the former license. The renewal for the year 1926 was denied.

No effort was made, either at the inception of the charge or afterward, to challenge the right of the board to act in the matter, on constitutional grounds. The right of an optometrist, duly licensed, to conduct his business or practice optometry is a property right protected by the Constitution: Dent v. West Va., 129 U. S. 114, 123, 124; Douglass v. Noble, 261 U. S. 165. Where property rights, so secured, are unlawfully invaded by the legislature, directly or by one of its agents, the aggrieved person may appeal to the courts for redress. This right had its inception in the Magna Charta. The remedy, unless otherwise provided by statute, is by proceeding in equity to enjoin the wrong: Truax v. Raich, 239 U. S. 33; 219 F. 273, 283; Ex Parte Young, 209 U. S. 123; Tuttle v. Gauner, 208 Fed. 605, 609. Where the statute provides no right of appeal to the courts from the determination of administrative tribunals on constitutional grounds, the right will be implied: Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 547; Buffalo B. Mut. Film Corp. v. Breitinger, 250 Pa. 225, 242.

When the board, in passing on appellant's application for a renewal of license for the year 1926, found his record marked with a violation of the law, it became their duty to refuse the application. It was not incumbent on them to reëxamine the charges, some of which were based on reasonable regulations to which the act required him to conform. For illustration, he was for-

bidden to practice optometry outside of, or away from, his office or place of business unless he established a branch office, equipped with the instruments necessary to make an optometric examination, and in charge of a regularly licensed optometrist; section 6 of the Act of 1917 as amended by the Act of 1925, P. L. 659. As the record discloses this conviction, it would conclude the question here raised, unless the rule of conduct prescribed by the legislature and violated was clearly in derogation of rights secured by the 14th Amendment of the Federal Constitution, and article I, section 1, of our Declaration of Rights. As appellant earnestly contends no remedy was afforded him to determine his right, we will consider the case as though such remedy did not exist.

Appellant concedes the law governing the practice of optometry, in the "main provisions," contains reasonable regulations. The legislature may define and regulate the practice of optometry and, to that end, prescribe reasonable qualifications to be possessed by those who desire to engage in the practice, and to provide reasonable means by which such qualifications may be ascertained to prevent those who do not possess them from practicing: McNaughton v. Johnson, 242 U. S. 344. But he urges the regulations forming the basis of the charges against him were unreasonable and in violation of his constitutional right. Are, then, the challenged regulations reasonable and appropriate to accomplish a legitimate object within the state's police power?

The Optometrical Act was passed because of the decision in Martin v. Baldy, 249 Pa. 253, where it was held that an optometrist was not a practitioner of medicine within the meaning of the acts relating to that practice. Optometry is defined as the "employment of any means other than the use of drugs for the measurement of the powers of vision, and the adaptation of lenses for the correction and aid of the vision of human beings." The preamble of the act states the legislative purpose to be

the safety of the citizens, who demand that their eyesight be protected from the hands of incompetent persons. The purposes of the act regulating the practice of optometry as it relates to the health of the people is a lawful exercise of the police power by the legislature: McNaughton v. Johnson, supra.

Therefore the manner, scope and extent of the practice are the subjects of legislative inquiry and control; but the regulations must be reasonable. The legislature under the police power does not possess the power to enact rules which have no substantial relation to the end to be attained. It cannot unreasonably prevent or limit the practitioner from acquiring the business for which he was licensed. Legislatures do not have the power, under the guise of police regulation, to arbitrarily invade the personal right and liberty of the individual. Its determination of the extent of its power is not final or conclusive: White's App., 287 Pa. 259. If it pass an act, ostensibly in the exercise of the police power, but which unnecessarily interferes with the personal liberty of the citizen, the courts may examine the act and determine whether it relates to the objects which the exercise of the police power is designed to, and does, secure: White's App., supra; Chenowith v. State Board, 57 Colo. 74; Dobbins v. Los Angeles, 195 U. S. 233.

The manner or mode of exercising a lawful occupation may be regulated only in the interest of public health or to secure safety to the citizens. The legislature cannot adopt, as regulations, the ethics of the profession which may limit the practice to be secured or the method of procuring it.

The portions objected to are, in addition to what we have quoted, section 6, providing "that peddling from door to door,......establishment of temporary offices, ......practice of optometry......outside of, or away from, his office or place of business, [are] specifically forbidden,......Branch offices may be established,

provided each branch office be fully equipped with the instruments necessary to make an optometric examination and is in charge of a regularly licensed optometrist. Any certificate holder operating a branch office otherwise than as hereinbefore provided shall be guilty of a violation of this act......"

Appellant contends that, as any citizen may sell from door to door or from person to person, as an article of merchandise, spectacles, without attempting to adapt or fit them to the eye, and as such sales are not unlawful under the act, the regulation as it affects optometrists is a gross discrimination against them, and a denial of their right to practice optometry as they wish. We do not so regard it. The inhibition prevents one known to have the qualifications of an optometrist, and licensed as such, from doing a thing in the same way as one who is not so known. In the one case, the vendor does not assume, directly or indirectly, to adapt glasses to the eyes. They are sold as so much merchandise. In the other case, the very fact of the license clothes his act with an apparent assumption that the glasses are adapted and fitted to the eyes. This imposes on the credulity of the public, already overtaxed by similar acts. It may be said this assumption would be true if a physician sold glasses in the manner indicated. This does not follow, as one learned in that profession is better qualified to treat the eye and determine to a degree from an inspection of it what would or would not be necessary in glasses or medicine than one having an optometric education. An optometrist is not required to study the branches of medical education and science which treat of the structure of the eye, or the related physical organisms on which it depends for life, and the effects which may follow any disruption of normal functioning. The difference between the two professions, if optometry may be called such, is so apparent that further discussion is unnecessary. Moreover, the legislature has power to classify and regulate itinerant ped-

dlers (Com. v. Gardner, 133 Pa. 284) ; and this should be so in cases like the one before us, for a broader reason, namely, such classification and regulation affects directly the health of the community: Baccus v. State of Louisiana, 232 U. S. 334. The law operates equally on all persons within the defined classification. The prohibition as to peddling of glasses by optometrists is a reasonable exercise of the police power by the legislature, having a direct and reasonable relation to the health of the people.

Appellant urges the act prohibits him from practicing outside or away from his office though he uses lawful methods. We do not understand the law so to read. There is nothing to prohibit the practitioner from intermittent practicing away from his office if he obeys the law. He cannot practice it by peddling on the streets or from person to person as the itinerant merchant, but if he is called to a home or hospital he must provide himself with the instruments necessary to properly fit or adapt glasses to the eye. We do not interpret the provision in the Act of 1925, supra, as prohibiting such visits.

An optometrist may not open more than one office unless he has a licensed optometrist in charge of the second office. If it is desired to engage in business on a large scale, and cover different places with his license, he must either make the examination personally with the necessary instruments or have it done in the same way by a registered optometrist. What the act intends to prevent is the indiscriminate opening of offices nominally under the protection of a license, but in reality in charge of one who is not registered.

A license once issued does not give a licensee an incontestable right to a renewal, otherwise the very purpose of license acts would be defeated. As stated in Butcher v. Baybury, 8 Fed. (2d) 153, "no person can acquire a vested right to continue, when once licensed, in a business, trade or occupation which is subject to

legislative control and regulation under the police power. The rights and liberty of the citizen are all held in subordination to that governmental prerogative, and to such reasonable regulations and restrictions as the legislature may from time to time prescribe. Regulations so prescribed and conformed to by the citizens may be subsequently changed or modified by the legislature wherever public interest requires it, without subjecting its action to the charge of interfering with contract or vested rights. This is elementary." As further stated, in a note on page 1273 of vol. 8, L. R. A. (N. S.), "The granting of a license in such cases is merely the means taken by the State, in the exercise of the police power, to regulate and restrict the engaging in certain professions and occupations for the public good, and confers no right whatever, in the way of a contract with the State, upon the licensee. He takes the same subject to the right of the State, at any time that the public demands, to make further restrictions and regulations thereto; and, if such restrictions and regulations are reasonable, they will be upheld, even though they actually prohibit some people from further engaging in such occupations or professions under a license previously granted."

The indiscriminate use of such offices without adequate supervision by the State was one of the evils to be remedied by the act. We have discussed the important phases of the act assailed.

The judgment of the court below is affirmed.