## Registration of Castrators as Veterinary Surgeons.

HERTZLER, Deputy Attorney General, April 1, 1931.—We have your request to be advised relative to the status of castrators who were engaged in the practice of castration and in no other form of veterinary medicine and surgery prior to the approval of the Act of May 5, 1915, P. L. 248, and those engaging in such practice since that date.

You have informed us that there are about fifty castrators from whom the board has been collecting a yearly registration fee, and that the auditors, directed by the Auditor General of the Commonwealth to make an audit of the accounts of your board, inquired what right you have to collect such fees. This is the occasion for your inquiry.

The history of the statutory regulation of the practice of veterinary medicine and surgery in this Commonwealth begins with the Act of April 11, 1889, P. L. 28, which, in turn, was followed by the Acts of April 29, 1891, P. L. 36, May 16, 1895, P. L. 79, April 18, 1905, P. L. 209, April 29, 1909, P. L. 277, and May 5, 1915, P. L. 248.

The first act provided for the registration of persons practicing veterinary medicine or surgery or any of the branches thereof. The amending Act of 1891 added a proviso, "That nothing in this act shall be taken or construed to apply to persons who practice castration of domestic animals and no other form of veterinary medicine and surgery." The same exception was made by section ten of the Act of 1895. The Act of 1915, however, repealed all of these prior acts, and failed to provide any exemption or exception for those who were engaged in the practice of castration of domestic animals.

The title to the Act of 1915 is as follows:

"An act regulating the practice of veterinary medicine, including veterinary surgery and veterinary dentistry, or *any branch thereof;* and establishing, as incidental thereto, a State Board of Veterinary Medical Examiners, and defining its powers and duties." (Italics ours.)

The act defined "veterinary medicine" to include veterinary surgery and veterinary dentistry or any branch of veterinary medicine, and established a full and complete system for the regulation of its practice. It is clear that the legislature intended to set up a comprehensive definition of veterinary medicine and desired it to include all branches of the profession.

Section twelve of the Act of 1915 provided for the licensure and registration, as existing practitioners, of all persons who had been legally licensed to practice veterinary medicine and for their lawful continuance in practice.

Section thirteen provided that any person not authorized to practice at the time of the passage of the act would have to possess certain qualifications and submit to an examination by the board before entering upon the practice of veterinary medicine.

In *Com. v. Heller,* 277 Pa. 539, the Supreme Court affirmed a decision of the Superior Court (80 Pa. Superior Ct. 366) holding the Act of 1915 to be a valid exercise of the police power, not in conflict with the Fourteenth Amendment to the Constitution of the United States, nor with article one, section nine, of the Constitution of Pennsylvania, and holding that veterinary dentistry is a branch of veterinary medicine. The court specifically stated at page 540 that castration was a branch of veterinary surgery:

"The amending Act of 1891 extended the time for registering as a practitioner to January 1, 1902 [1892], and added a proviso that the act should not apply to persons who practiced castration of domestic animals 'and no other form of veterinary medicine and surgery,' showing that even that humble branch of veterinary surgery had to be specially excluded from the operation of the statute."

Therefore, it is clear that castration is a branch of veterinary surgery, and that it is regulated by the Act of 1915, no exemption or exception having been provided by the legislature.

The pursuit of a profession or the exercise of a lawful occupation may be regulated by the legislature in the interest of public health, or to secure safety to the citizens, and the Act of 1915 is a constitutional exercise of the police power: Com. *v.* Palmer, 71 Pa. Superior Ct. 188; Com. *v.* Heller, *supra.*

"It has been deemed wise by the legislature to give to our domestic animals the same scientific care and attention that we do to human beings. . . . With the wisdom of the legislation we have nothing to do: . . ." Com. *v.* Palmer, *supra*, at p. 190.

The right of the legislature to regulate a business or profession in the interest of the public health or safety of the citizens has been frequently upheld in this Commonwealth. See Harris *v.* State Board of Optometrical Examiners, 287 Pa. 531; Com. *v.* Long, 100 Pa. Superior Ct. 150, citing Collins *v.* Texas, 223 U. S. 288, Dent *v.* West Virginia, 129 U. S. 114, and Graves *v.* Minnesota, 272 U. S. 425.

The state may, in the exercise of its police power, restrict and regulate the practice of such professions and work at such occupations as may be termed quasi public or such as require special skill and preparation. If the public good demands, the state may at any time prohibit persons from further engaging in such professions or occupations under a license previously granted: State *v.* Horvorka, 100 Minn. 249, 110 N. W. 870; Reetz *v.* Michigan, 188 U. S. 505.

The fact that castrators were exempted under the early acts dealing with the practice of veterinary medicine and surgery did not give them an incontestable right to further exemption or exception. Even a license once issued does not give the licensee an absolute right to renewal. A license confers no right whatever upon the licensee in the nature of a contract with the state. The state may impose further restrictions and regulations even though such regulations deprive those hitherto licensed of the right to continue the practice for which they were licensed.

Mr. Justice Kephart, in Harris *v.* State Board of Optometrical Examiners, *supra*, at pages 538 and 539, succinctly stated the rule on this question as follows:

"*A license once issued does not give a licensee an incontestable right to a renewal, otherwise the very purpose of license acts would be defeated.* As stated in Butcher *v.* Maybury, 8 Fed. (2) 155, 'no person can acquire a vested right to continue, when once licensed, in a business, trade or occupation which is subject to legislative control and regulation under the police power. The rights and liberty of the citizen are all held in subordination to that governmental prerogative, and to such reasonable regulations and restrictions as the legislature may from time to time prescribe. Regulations so prescribed and conformed to by the citizens may be subsequently changed or modified by the legislature whenever public interest requires it, without subjecting its action to the charge of interfering with contract or vested rights. This is elementary.' As further stated, in a note on page 1273 of vol. 8, L. R. A. (N. S.), 'The granting of a license in such cases is merely the means taken by the State, in the exercise of the police power, to regulate and restrict the engaging in certain professions and occupations for the public good, and confers no right whatever, in the way of a contract with the State, upon the licensee. He takes the same subject to the right of the State, at any time that the public

demands, to make further restrictions and regulations thereto; and, if such restrictions and regulations are reasonable, they will be upheld, even though they actually prohibit some people from further engaging in such occupations or profession under a license previously granted.'" (Italics ours.)

It is, therefore, our opinion, and we advise you, that those persons engaged in the practice of castration of domestic animals are engaged in the practice of a branch of veterinary surgery and are subject to the provisions of the Act of 1915. Persons engaged in the practice of castration prior or subsequent to the Act of 1915 must meet its requirements or subject themselves to criminal prosecution for practicing veterinary surgery without a license. Your board has no authority to register unlicensed castrators annually in accordance with section twenty-one, as no provision is made for the licensure and registration of any one practicing a limited form or branch of veterinary medicine and surgery.

This opinion conflicts with and reverses an earlier opinion of this department, reported in 24 Dist. R. 1117. That opinion was rendered prior to the decisions of the Supreme and Superior Courts of this state herein cited, which, in our judgment, compel us to reach a different conclusion.

In view of the fact that your board has been registering certain castrators annually under the prior opinion of this department, before you institute any criminal prosecutions against them, you should advise them that they may no longer engage in such practice without securing a license.

From C. P. Addams, Harrisburg, Pa.