## Rosenthal et al. v. O'Hara, Secretary of the Commonwealth

*Thomas D. Caldwell* and *Harry Shapiro*, for plaintiffs.

*H. J. Woodward*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for defendant.

GREER, J., forty-seventh judicial district, specially presiding, November 22, 1940.—Plaintiffs are petitioners for a writ of alternative mandamus to compel the grant to them of a certificate of incorporation for a proposed corporation to be known as "Community Opticians, $7.00 Eyeglasses, Philadelphia Corp." under the Business Corporation Law of May 5, 1933, P. L. 364, whose express purpose is "to grind, polish, cut, shape and fit eyeglasses for all purposes."

The refusal by the Secretary of the Commonwealth is predicated upon the averment in a motion to quash the petition, inter alia, that the petition fails to show clearly that the type of business intended to be conducted by the proposed corporation would be exempt from the requirements of section 12 of the Act of March 30, 1917, P. L. 21, as amended by the Act of May 25, 1937, P. L. 795, and that the petition fails to show a clear legal right to the grant of articles of incorporation.

The only question before us is whether or not the refusal to approve the articles of incorporation was proper. That part of the purpose expressed by the words "to grind, polish, cut" are terms relating exclusively to purely mechanical operations. The clause "shape and fit eyeglasses for all purposes" has a larger content, particularly as regards the word "fit." While this word is a handle for many tools, ranging from purely mechanical oper-

ations not requiring special skill and training, to those demanding the highest technical and expert skill, we are not left in doubt as to its meaning in its connotation with respect to its context in the application for the charter.

In the case of Harris v. State Board of Optometrical Examiners, 287 Pa. 531, 538, where the subject matter was the right of an optometrist under the Act of March 30, 1917, P. L. 21, and its supplements, to a license, Mr. Justice Kephart used the following language:

"He cannot practice it [optometry] by peddling on the streets or from person to person as the itinerant merchant, but if he is called to a home or hospital he must provide himself with the instruments necessary to properly fit or adapt glasses to the eye."

And again in the case of Commonwealth v. Miller, 337 Pa. 246, in the course of the opinion of Mr. Justice Drew, the following language occurs (p. 248) :

"This court recognized the distinction between the profession of optometry and the trade of optician in *Neill v. Gimbel Brothers, Inc.*, supra, at page 216, where the present Chief Justice said: 'The professional charges of optometrists are for examining the eyes, for prescribing glasses and for examining and fitting glasses after they are made. Prescriptions for glasses formulated by optometrists are filled by the patient's own optician or by an optician chosen by the optometrists'."

In the case of Martin v. Baldy, 249 Pa. 253, 255, the distinction is clearly drawn between the mechanical processes used by an "optician" and the class of persons who operate under the name of "optometrists", the former confining themselves entirely to the work of making glasses in accordance with prescriptions given by physicians or oculists, and the others who do not confine themselves to the making of lenses but also examine the eyes for the purpose of ascertaining any defect of vision which can be corrected by the application of lenses. It was the decision of the court in this case that led to the enactment of the present law regulating the practice of optometry.

It will be seen, then, that there is a distinct line of cleavage between the words "grind, polish, cut," all purely mechanical operations, and the clause "shape and fit eyeglasses for all purposes," which latter operation has been judicially decided to constitute the practice of optometry; nor does the exemption referred to in the Act of May 25, 1937, P. L. 795, sec. 5, 63 PS §240, apply to those who directly or indirectly adapt spectacles and eyeglasses to the eye, the word "adapt" being synonymous with it.

The name of the proposed corporation as suggested by the Commonwealth's counsel also leaves much to be desired and offends at least the spirit, if not the letter, of section 857 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4857.

Having in mind, therefore, the purpose expressed in the preamble of the Act of 1917, supra, which reads as follows:

"Whereas, The eyesight of the citizens of this Commonwealth is endangered by incompetent persons practicing optometry, and due regard for the safety and protection of the citizens demands that only authorized and qualified optometrists shall be permitted to practice optometry"; as also the definition of the term "optometry" as given in the foregoing section, namely, "the employment of any means, other than the use of drugs, for the measurement of the powers of vision and the adaptation of lenses for the correction and aid of the vision of human beings," we conclude that the action of the Secretary of the Commonwealth in refusing the application for articles of incorporation was a valid exercise of her powers and within her discretion.

## Decree

And now, November 22, 1940, the alternative writ of mandamus heretofore issued is quashed at the cost of plaintiffs.