## H. E. Dolan College of Embalming, Inc., et al. v. Vaux et al.

*Schnader, Harrison, Segal & Lewis,* for plaintiffs.

*Charles J. Margiotti,* Attorney General, *Elmer T. Bolla,* Deputy Attorney General, and *Abraham J. Levy,* Deputy Attorney General, for defendants.

NEELY, J., January 8, 1951.—This proceeding is in equity and the matter is now before us on the bill of complaint and answer thereto. The parties have stipulated the facts. Plaintiffs seek to enjoin defendants from enforcing or threatening to enforce a certain amendment to the rules and regulations of the State Board of Undertakers of the Commonwealth requiring student apprentices to have two years' practical experience in the undertaking business before going to embalming school. We are asked to make an order declaring that

it was beyond the power of the board to adopt and promulgate such regulation.

## Plaintiffs' Bill

Plaintiffs aver that they are corporations organized and existing under the laws of the Commonwealth of Pennsylvania, engaged in the business of instructing and training students in the mortuary arts and sciences and allied subjects. Dolan College has its principal office and place of business at Philadelphia, Pa. Pittsburgh Institute of Mortuary Science, Inc., has its principal office and place of business in the City of Pittsburgh, Pa. It is averred that defendants constitute the State Board of Undertakers of the Commonwealth of Pennsylvania, and that one of them is Secretary of that Board. It is averred that on or about June 22, 1949, defendants adopted and promulgated an amendment to the rules and regulations of the board effective March 31, 1950, providing that no student apprentice shall be registered unless he or she shall immediately upon registration enter into a two-year apprenticeship training period with a licensed undertaker, upon completion of which term he or she may then enter an embalming school. It is averred that the effective date was July 31, 1949, but later that date was postponed to March 31, 1950.

It is set forth that the board has interpreted the amendment to mean that attendance at an embalming school must be served after the two-year apprenticeship for the purpose of qualifying as a licensed undertaker. It is averred that the amendment was not adopted by defendants in the interest of public health, safety and welfare, but for the purpose of reducing the number of persons who may engage in the practice of undertaking in the Commonwealth.

It is averred in the bill that a limited number of apprentices without embalming school training will

complete their apprenticeship within the next two years; and that the limited number of apprentices who will qualify for entry into embalming schools under the purported amendment to the regulations will reduce the enrollment in embalming schools in this Commonwealth to the extent that operations cannot be continued at the present standards. It is averred that the amended regulation and its enforcement will cause embalming schools in this Commonwealth, including plaintiffs', to operate at a considerable financial loss.

It is further averred that due to the existence of the purported amendment to the regulation, and its interpretation by defendants, plaintiffs cannot contract with students who have not completed their apprenticeship. The bill alleges that the regulation is invalid for the following three reasons:

1. The regulation violates the due process clause of the fourteenth amendment of the Constitution of the United States, and article I, secs. 1 and 9 of the Constitution of the Commonwealth of Pennsylvania. It is claimed that it deprives plaintiffs of liberty of contract and of their property without due process of law, in that the regulation is arbitrary and unreasonable, and has no reasonable relation to the policy of the statute or the objects sought to be attained by the act.

2. Although the Act of June 10, 1931, P. L. 485, as amended, provides that student apprentices may have embalming school training, the purported regulation states in effect that applicants for licenses shall have such training after the completion of the apprenticeship. Hence it is contended that the wording of the regulation is not within the language of the act of assembly, since it does not apply to apprentices as stipulated in the act.

3. Section 14 of the Act of July 19, 1935, P. L. 1324, amending the Act of 1931, giving the board power to require embalming school training, constitutes an un-

constitutional delegation of legislative power, for the reason that section 14, as amended, fixes no standards governing the quantity or quality of such training, contrary to the provisions of article II, sec. 1 of the Constitution of our Commonwealth. Hence it is claimed that the regulation is an exercise of legislative power improperly delegated to the board, and therefore invalid.

## The Answer

The answer admits that the board promulgated the amendment to the regulation as averred in plaintiffs' bill. It takes issue, however, with plaintiffs' averment of illegality or unconstitutionality of the regulation or the act of assembly. The answer avers that the regulation was in all respects within the provisions of the act requiring an embalming school training of apprentices, and denies that the regulation was intended to apply to applicants rather than apprentices, as defined by the act. Defendants deny that plaintiffs are deprived of liberty of contract and of their property without due process of law. The answer avers that the act of assembly was not in violation of the Constitution of Pennsylvania, as pleaded in the complaint. It is particularly denied that the act constituted an unlawful delegation of legislative authority to the board.

## Findings of Fact

1. Plaintiffs H. E. Dolan College of Embalming, Inc., and Pittsburgh Institute of Mortuary Science, Inc., are corporations organized and existing under the laws of the Commonwealth of Pennsylvania, engaged in the business, in consideration of a tuition fee of $750 per student for a 12-month course, of instructing and training students in the mortuary arts and sciences and allied subjects. Plaintiff Dolan College of Embalming, Inc., has its principal office and place of business at Philadelphia, Pa. Plaintiff Pittsburgh Institute of

Mortuary Science, Inc., has its principal office and place of business at Pittsburgh, Pa.

2. Defendant Norris W. Vaux is Secretary of Health and as such is ex officio a member of the State Board of Undertakers; defendant Howard J. Snowdon is chairman of the board; and defendants Edward S. Blair, Frank Pritchard and W. Judson Dean are the remaining members of the board. Defendant John W. Hartman is secretary of the board. The State Board of Undertakers is a departmental administrative board in the Department of Health.

3. On or about June 22, 1949, defendants adopted and promulgated as an amendment to the rules and regulations of the State Board of Undertakers of the Commonwealth of Pennsylvania, to be effective July 31, 1949, the following requirement, to wit:

"Commonwealth of Pennsylvania
"Department of Health
"State Board of Undertakers
"Harrisburg
"Amendment to the Rules and
Regulations

"The following amendment to Section 5 (b-1) and (b-2) was unanimously adopted by the Board at a regular meeting in executive session on Wednesday, June 22, 1949:

"(5) (b) STUDENT APPRENTICES

"3. No person shall be registered as a Student Apprentice unless and until the applicant shall have first presented a Pre-Professional Certificate from the Department of Public Instruction showing that he or she is a graduate from an approved high school of this Commonwealth, or has an education equivalent thereto under the Rules and Regulations of the Department of Public Instruction; *and shall immediately upon registration as a Student Apprentice enter into the two year apprenticeship training period, and upon com-*

*pletion of which he or she may then enter an embalming school, duly accredited by this Board, to satisfy the embalming school training requirement.*" (Italics supplied.)

As a result of protests, the effective date of the action taken on June 22, 1949, was thereafter postponed to March 31, 1950.

4. On June 22, 1950, plaintiffs, H. E. Dolan College of Embalming, Inc., and Pittsburgh Institute of Mortuary Science, Inc., appeared by counsel before the State Board of Undertakers, and filed a formal petition, together with supporting data concerning the number of students enrolled in embalming schools from the year 1946 to 1950, inclusive, requesting the board to rescind the amendment of its rule set forth in paragraph 3 above. This application was denied and plaintiffs were orally informed of the denial on June 26, 1950.

5. With respect to students now attending embalming colleges who have not as yet served their apprenticeship, the rule will not be applied, and upon application for their licenses, such students will receive credit for embalming school attended prior to serving apprenticeship.

6. Defendants have interpreted their action as set forth in paragraph 3 above to mean that attendance at embalming school after completion of apprenticeship is mandatory, and defendants will, subject to any order entered in this case, enforce the rule in accordance with their interpretation.

7. As a result of the protests against the rule, the State Board of Undertakers held hearings on January 9, and 10, 1950, at Harrisburg; on January 11, 1950, at Wilkes-Barre; on January 13, 1950, at Pittsburgh, and on January 14, 1950, at Erie.

8. At the hearing held at Erie, counsel for the board made the following statement:

"In promulgating and adopting the regulation, we felt we were rapidly getting into a position with new apprenticeships and that new undertakers are being licensed in the State of Pennsylvania at a terrific rate, where we had an average of 350 or 400 applicants coming up for examination twice a year.

"With that condition over a period of time, anyone who desires could take up the apprenticeship and that was a most untenable situation, and something had to be done to bring some kind of a halt to stop this procedure. The board feels something had to be done and done in a terrific hurry or the field would sell themselves out of the business. They felt they should set up some sort of a barrier. Whatever motivated it—it was a piece of regulation which was intended to bring a halt to this, either to stop them from coming in or to save some people from their own actions because somebody made it look attractive to them.

'"They felt they should take the responsibility for a student apprentice, and put it into the hands of the undertakers, so they would be the ones who would have the control for new student apprentices, therefore, to save the apprentices from their own foolishness. They felt he should be apprised of what the situation is before he spent his time and his substance in taking an embalming school course, and then looking for a possible preceptor and then later he would come to the conclusion that wasn't what he wanted. If you let him come in, and register him, and the young man comes in after two or three months and says: 'He thought they were all rich people, drive Cadillacs and so on.' "

9. There are three embalming colleges operating in the Commonwealth of Pennsylvania, as follows: H. E. Dolan College of Embalming, Inc., at Philadelphia; Pittsburgh Institute of Mortuary Science, Inc., in Pittsburgh, and the Eckels College of Mortuary Science, Inc., at Philadelphia. The total enrollment of students

at these embalming colleges, according to the records of the colleges in recent years is as follows:

| Class | Entering | | Total |
|---|---|---|---|
| 1946 | Spring | 428 | |
| | Fall | 548 | |
| | | | 976 |
| 1947 | Spring | 378 | |
| | Fall | 424 | |
| | | | 802 |
| 1948 | Spring | 202 | |
| | Fall | 359 | |
| | | | 561 |
| 1949 | Spring | 166 | |
| | Fall | 244 | |
| | | | 410 |
| 1950 | Spring | 134 | 134 |
| | | | 2,883 |

10. This enrollment included students from Pennsylvania who had indicated their intention to practice in this State.

11. Embalming colleges in this Commonwealth admit students twice yearly: In late September or early October, for a fall class, and in March for a spring class. Contracts for supplies and for an adequate faculty are made from two to three months before the classes begin.

12. The operation of this rule would deprive the H. E. Dolan College of Embalming, Inc., of the enrollment of any students who have not served their apprenticeship, and the college, on the basis of recent experience, will lose about 20 students a term, or 40 for a year, and will lose an annual gross income from tuition of about $30,000.

13. The operation of the rule will deprive the Pittsburgh Institute of Mortuary Science, Inc., of the enrollment of any students who have not served their apprenticeship, and, based upon recent experience, this will mean a loss of 25 students a term, or 50 students a year, and there will be a gross loss of income of about $37,250.

14. In 1936 the State Board of Undertakers, pursuant to the amendment to section 14 of the Act of June 10, 1931, P. L. 485, by the Act of July 19, 1935, P. L. 1324, adopted and promulgated a regulation requiring six months' embalming school training for student apprentices. In 1939 the board amended the regulation of 1936 by raising the requirement of embalming school education to nine months. And in 1941 the board further amended this regulation and raised the embalming school education requirement to 12 months. In January 1946 the board amended the original regulation of 1936 to the effect that the student apprentice undertaker could elect, at the time he applied for registration as such, whether he would enter into his embalming school training or the two-year apprenticeship training with an undertaker preceptor.

15. By rule effective January 1, 1941, and now in effect, the following are educational requirements for student apprentices:

"A twelve-month course which shall include all the following subjects and which shall not be less than 1,440 class hours of actual teaching and laboratory work. under the supervision of competent teachers and instructors.

"The minimum hours devoted to each subject shall be as follows and shall be a complete and continuous course:

|  |  | Hours |
|---|---|---|
| "(a) | Embalming (including principles and practice, cosmetology and hairdressing) | 300 |
| "(b) | Anatomy (including physiology, histology, embryology and dissection) | 300 |
| "(c) | Pathology | 120 |
| "(d) | Bacteriology (including hygiene, sanitation and public health) | 180 |
| "(e) | Chemistry (including toxicology, inorganic, organic and physiological chemistry) | 180 |
| "(f) | Restorative Art | 120 |

"(g) Mortuary Administration (including Mortuary Law, Bookkeeping, Business Ethics and Funeral Management) .............................. 120

"(h) Elective subjects ........................... 120

"Total ................................. 1,440"

16. It is dangerous to public health for untrained people to operate in and around dead bodies, there being always present the potentiality of transmission of communicable diseases because of contamination from working with such bodies.

### Discussion

In our view the board's amended regulation 5(b)3, to the extent that it requires immediate student apprenticeship, to be followed by embalming school training, constitutes a violation of the due process clause of the fourteenth amendment of the Constitution of the United States, and of article I, secs. 1 and 9 of the Constitution of Pennsylvania. This case has been consolidated with another proceeding in which we have this day handed down our adjudication, to wit, Richard S. Brandt, I. Parker Miller and Ronald C. Jones v. Norris W. Vaux, Secretary of Health of the Commonwealth of Pennsylvania, Ex Officio Member of the State Board of Undertakers; Howard J. Snowdon, Chairman, Edward S. Blair, Frank Pritchard and W. Judson Dean, Members, and John W. Hartman, Secretary of the Board, Commonwealth docket, 1950, no. 183. In our adjudication which we have filed in this latter proceeding, we have discussed at some length the reasons for our conclusion that the regulation violates the due process clause. No useful purpose would be served in repeating that discussion herein. We have also considered at length in our adjudication in the proceeding at Commonwealth docket, 1950, no. 183, plaintiffs' contention that section 14 of the Act of 1935 constituted an unlawful delegation of legislative authority. Reference

may be had to that proceeding for the reasons for our conclusion that this section violates article II, sec. 1 of the Constitution of our Commonwealth.[1]

Defendants contend that even though the regulation is unconstitutional, plaintiffs are not within the class entitled to complain, since the regulation does not operate directly upon them. That plaintiffs are affected by the regulation is clearly shown in this record. The enforcement of the regulation will result in financial loss to these plaintiffs. We are not here dealing with the question as to whether a ruling by an administrative board can be attacked by a person not subject to the regulatory jurisdiction of that board. Under the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.41, and statutes dealing with particular agencies, only persons affected by the decisions of administrative agencies, who have immediate and direct interest therein and are aggrieved thereby, have the right to have an administrative adjudication reviewed in court. And persons who are only remotely and indirectly affected by such adjudication have no right to a judicial determination of the questions decided by such agency: Pennsylvania Commercial Drivers Conference et al. v. Pennsylvania Milk Control Commission et al., 360 Pa. 477 (1948). The problem in the instant case is essentially different. The question here is whether or not a person who has suffered severe financial loss, by reason of the promulgation of an unconstitutional order, can attack its validity. That is not a question of administrative law, but of basic constitutional law.

In St. Bartholomew's Protestant Episcopal Church Charter, 260 Pa. 284, 288 (1918), the Supreme Court said:

"Constitutional questions can be raised . . . by one materially prejudiced, in person, property or estate, through preliminary steps taken to put into effect the

---

[1] Brandt et al. v. Vaux et al., supra, page 154.

act assailed . . .; or, . . ., by one affected through actual operation of the act."

Substantially the same question as that involved herein was decided in Pierce v. Society of Sisters, 268 U. S. 510, 536 (1925). In that case the United States Supreme Court held that two private schools, because of their potential diminution in enrollment and attendant financial loss, had standing to attack a State compulsory education law on the ground that it was an unreasonable interference with the liberty of contract of the schools, and, incidentally, with the liberty of parents in the upbringing of their children. The court said:

". . . Plaintiffs asked protection against arbitrary, unreasonable and unlawful interference with their patrons and the consequent destruction of their business and property. Their interest is clear and immediate, within the rule approved in Truax v. Raich, Truax v. Corrigan and Terrace v. Thompson, supra, and many other cases where injunctions have issued [2] to protect business enterprises against interference with the freedom of patrons or customers."

A similar result was reached in International Ry. Company v. Davidson et al., 257 U. S. 506 (1922) where a toll bridge company successfully attacked an action of the Secretary of the Treasury in refusing to inspect baggage on Sundays, which resulted in a decrease in the volume of traffic crossing over the bridges owned by the railway company, causing a loss of tolls to the company. Finding that the action of the secretary was beyond the powers granted to him by the Congress, the court held that the bridge company was entitled to sue because of the threat to "vital interests . . . to which a court of equity should afford protection".

In Knowles' Estate, 295 Pa. 571, 586 (1929), Chief Justice von Moschzisker reviews many decisions hold-

[2] 239 U. S. 33, 257 U. S. 312 and 263 U. S. 197, respectively.

ing that a person can only challenge the constitutionality of an act who is adversely affected thereby. We clearly recognize this principle of law, and in our view plaintiffs are adversely affected. See Stark et al. v. Wickard, 321 U. S. 288, 304 (1944) ; Columbia Broadcasting System, Inc., v. United States et al., 316 U. S. 407, 420 (1942).

In Martin v. Baldy, 249 Pa. 253 (1915), an injunction was issued against defendants to restrain them from enforcing the provisions of the Medical Practice Act of June 3, 1911, P. L. 639, as amended, 63 PS §401, against plaintiffs, who were not within the terms of the act.

In Bayuk Cigars, Inc., et al. v. Chesnut, 54 D. & C. 109, 118 (1945), this court, speaking through our late President Judge Hargest, said:

". . . but the recent decisions of the Supreme Court of Pennsylvania have broadened the scope of equitable jurisdiction where an administrative agency is attempting to exercise powers not conferred upon it (Bell Telephone Co. v. Driscoll et al., 343 Pa. 109; Western Pennsylvania Hospital et al. v. Lichliter et al., 340 Pa. 382, 392), where the legal remedy is not both adequate and complete (Fidelity-Philadelphia Trust Co. et al. v. Bashore, Secretary of Labor, etc., 44 Dauph. 380; Fidelity-Philadelphia Trust Co. et al. v. Hines, Secretary of Labor, etc., 337 Pa. 48; York Rys. Co. v. Driscoll et al., 331 Pa. 193, 197; Harris v. State Board of Optometrical Examiners, 287 Pa. 531, 534), . . . and a bill may be sustained on the ground that it is the most convenient remedy (Equitable Loan Society et al. v. Harr, Secretary of Banking et al., 45 Dauph. 198, 201)."

The effect of the challenged regulation is to cause a reduction in the number of persons who may engage in the practice of undertaking, which necessarily means a corresponding reduction in the number of students in

plaintiffs' schools and attendant financial loss. In our opinion, plaintiffs are so adversely affected by the regulation that they are entitled to equitable relief.

In view of our conclusion that the regulation is unconstitutional as violating the due process clause, and also article II, sec. 1 of the Constitution of Pennsylvania, it is unnecessary to discuss herein the additional contention of plaintiffs that the regulation is in contravention of the statute in that it requires attendance at embalming school after the completion of the apprenticeship.

In view of the foregoing, we state the following

### *Conclusions of Law*

1. The Act of June 10, 1931, P. L. 485, as amended by the Act of July 19, 1935, P. L. 1324, is a police measure designed for the protection of the health and safety of the people of this Commonwealth.

2. The amended regulation 5 (*b*) 3 of the State Board of Undertakers, to the extent that it requires student apprentices immediately upon registration to enter into an apprenticeship of two years with a licensed undertaker, and thereafter to enter an embalming school, is arbitrary and unreasonable.

3. The amended regulation, to the extent that it requires such apprenticeship to be served before embalming school training, is not a valid regulation in the interest of the health and safety of the people of this Commonwealth.

4. The amended regulation, to the extent that it requires such apprenticeship to be served before embalming school training, is invalid as being in violation of the due process clause of the fourteenth amendment of the Constitution of the United States, and article I, secs. 1 and 9 of the Constitution of Pennsylvania.

5. Section 14 of the act of assembly, providing that "the Board may require an embalming school train-

ing of apprentices," constitutes a delegation to the State Board of Undertakers of the duty and power to require such training.

6. The act of assembly did not prescribe any requirements for embalming school training, nor did it set forth any standards by which the board could determine what that training should be.

7. Under the provisions of the act there was an unconstitutional delegation of legislative power to the State Board of Undertakers, contrary to the provisions of article II, sec. 1 of the Constitution of Pennsylvania.

8. It was beyond the power of the State Board of Undertakers to adopt and promulgate the amended regulation 5 (b) 3 with respect to immediate apprenticeship to be followed by embalming school training, since the regulation was predicated upon an unlawful delegation of legislative authority.

9. Plaintiffs are adversely affected by the amended regulation and are entitled to equitable relief in this proceeding.

### Decree Nisi

And now, January 8, 1951, it is ordered, adjudged and decreed that defendants be and they are hereby enjoined and restrained from enforcing or threatening to enforce that certain portion of the amended regulation 5 (b) 3 of the State Board of Undertakers promulgated on or about June 22, 1949, hereinabove identified particularly in finding of fact no. 3, which provides that a person is not to be registered as a student apprentice unless the applicant "shall immediately upon registration as a Student Apprentice enter into the two year apprenticeship training period, and upon completion of which he or she may then enter an embalming school, duly accredited by this Board, to satisfy the embalming school training requirement"; that the portion of the regulation hereinabove quoted in this decree is herewith declared null and void.

The prothonotary is directed to enter this decree nisi and forthwith notify the parties to this proceeding, or their counsel. If no exceptions are filed within 10 days after the entry of this decree, a final decree will be entered. The costs shall be paid by defendants.